UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:  04-60897-CIV-MARRA/JOHNSON

MARTY STEINBERG, as court-appointed
Receiver for LANCER MANAGEMENT
GROUP LLC, et al.

      Plaintiffs

v.

BARCLAY'S NOMINEES (BRANCHES)
LIMITED, A/C HASO, et al.

      Defendants.
_____/

## ORDER AND OPINION

THIS CAUSE is before the Court upon Defendant Credit Agricole Indosuez

Luxembourg A/C Unicorn's Motion to Dismiss Amended Complaint [DE 80].  The

motion is fully briefed and ripe for review.  The Court has carefully considered the

motion, the response, the supplemental response,[1] the reply and is otherwise fully

advised in the premises.

## Introduction

The Receiver is seeking to recover alleged fraudulent transfers from defendant

Credit Agricole Indosuez Luxembourg ("Credit Agricole" or "Defendant").  The claims

_____

[1] The Court, in an Order and Opinion entered on December 5, 2007, authorized
the Receiver to conduct limited jurisdictional discovery relating to Credit Agricole's
contacts with the United States.  DE 108 at 7.  That discovery has been completed
and is addressed by the Receiver in his supplemental response to the motion to
dismiss and in Defendants' reply.

relate to excess redemptions that Defendant received from the Lancer Offshore and

Omnifund Funds - that is, the redemptions in excess of the amounts it invested in

those Funds.  Defendant has moved to dismiss the Amended Complaint on the grounds

that (1) this Court lacks personal jurisdiction over Credit Agricole; (2) as a "mere

conduit" of the redemptions, Credit Agricole was not a "transferee" within the

meaning of Florida's Uniform Fraudulent Transfer Act ("FUFTA"); (3) Credit Agricole

should be dismissed from this case based on the doctrine of *forum non conveniens*;

(4) the applicable statutes of limitations bar the Receiver's claims against it; (5)  the

Receiver did not timely serve Credit Argicole; (6) the Receiver cannot state a claim

under Florida's fraudulent transfer statutes because he is not a statutory "creditor,"

and (7) the Receiver has failed to plead the fraudulent transfer claims in accordance

with Federal Rule of Civil Procedure 9(b).  Several of these arguments have already

been raised by other co-defendants in this case, and in parallel actions brought by

the Receiver seeking to recover fraudulent transfers.

## STANDARD OF REVIEW

### Personal Jurisdiction over Credit Agricole

A federal district court may exercise personal jurisdiction over a nonresident

defendant when it "has certain minimum contacts with [the forum] such that the

maintenance of the suit does not offend traditional notions of fair play and

substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

414 (1984) (internal quotation marks omitted).  In cases where the court exercises

personal jurisdiction by virtue of a federal statute authorizing nationwide service of process, the requirement of "minimum contacts" with a forum state is inapplicable. *Briggs v. Goodwin*, 569 F.2d 1, 8-10 (D.C. Cir.1977), *rev'd sub nom. on other grounds*, *Stafford v. Briggs*, 444 U.S. 527 (1980).  In such circumstances, minimum contacts with the United States suffice.  *United States Sec. & Exch. Comm'n v. Carrillo,* 115 F.3d 1540, 1543 (11th Cir. 1997) (applicable forum for minimum contacts analysis, in determining whether exercise of personal jurisdiction over nonresident defendant comports with due process, is the United States, rather than state where suit is brought, in cases where service of process has been effected pursuant to federal statute authorizing nationwide or worldwide service); 4 Charles Alan Wright et al., Federal Practice And Procedure § 1068.1 (2d ed. 1997).

An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary but not mandatory.  *E.g., Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990); *Bracewell*, 748 F.2d at 1504.  Because the parties did not request an evidentiary hearing, the Court exercises its discretion not to conduct one.

Absent an evidentiary hearing, the plaintiff need not prove the existence of personal jurisdiction by a preponderance of the evidence; rather, the plaintiff's burden is to establish a prima facie case of personal jurisdiction.  *E.g., Carrillo,* 115 F.3d at 1542.  A prima facie case requires "enough evidence to withstand a motion for directed verdict."  *Id*. (internal quotes omitted).  In determining whether the plaintiff has established a prima facie case, the Court must accept as true all allegations of

the complaint that are not controverted by evidence submitted by the defendant. *E.g., id; Bracewell*, 748 F.2d at 1504.   Thus, if the allegations of the complaint establish a prima facie case of personal jurisdiction and the defendant submits no evidence controverting those allegations, the jurisdictional inquiry comes to an end.

If the allegations of the complaint do not themselves establish a prima facie case of personal jurisdiction, or if they are controverted by the defendant's evidence, the plaintiff must respond with affirmative evidence to supply the deficiency.  *Posner v. Essex Insurance Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).  If the plaintiff does so, its evidence is to be credited even if it conflicts with the defendant's evidence.  *E.g., Molina v. Merritt & Furman,* 207 F.3d at 1356; *Morris v. SSE, Inc.* 843 F.2d 489, 492 (11th Cir. 1988).

## Factual Background

On July 19, 2004, the Receiver filed the Complaint in this action against 27 defendants, including Credit Agricole, asserting three claims under Florida's fraudulent transfer statutes and one claim for unjust enrichment. DE 1, ¶¶ 32-52. Credit Agricole was never served with the original Complaint.  Approximately two years later, on July 12, 2006, the Receiver filed an Amended Complaint [DE 14], again listing Credit Agricole as a defendant.  The Amended Complaint asserts the same causes of action and seeks to recover the same transfers from Defendant as the original Complaint.  The docket reflects another 11 months of inactivity by the Receiver, with no effort to effect service and no explanation for the delay.  After

approximately a third year, on June 12, 2007, the Receiver had the Clerk issue a

summons for the Defendant.  DE 18.  Service was perfected on Credit Agricole in July

2007.

The Complaint alleges that Credit Agricole was an investor in the Offshore and

Omnifund Funds.  *See* Am. Compl. ¶¶ 86-88 & Ex. B.  Defendant received redemptions

from the Funds in the amount of 1,000,000 on March 1, 2001, and in the amount of

$500,000 on February 1, 2001.  Am. Comp. Ex. B.  Those redemptions resulted in an

alleged profit of $950,000.  *Id*.

Supplemental jurisdictional discovery has revealed that Credit Agricole

maintained two separate bank accounts in New York:  A cash correspondent account

maintained with Banker's Trust of New York, and a securities correspondent account

with Brown Brothers Harriman in New York.  DE 134, Ex. B at 7.  The Subscription

Agreement and Revocable Proxy signed by Credit Agricole for the subscription in

Lancer Offshore specifically designated Credit Agricole's account at Bankers Trust

Company of New York, 130 Liberty Street, New York, New York 10006, for the

remittance of payments on the investment.  DE 134, Ex. A at CA 0038.  That account

was maintained in the name of the Defendant, "Credit Agricole Indosuez

Luxembourg."  *Id*.  In addition, other documents produced by Credit Agricole confirm

that, when it submitted requests for the specific transfers at issue here, Credit

Agricole directed the remittances be made to its Bankers Trust Company of New York

account.  DE 134, Ex. C at CA 0107, CA 0103, CA 0109, CA 0139.

In addition, the documents produced by Credit Agricole also indicate that its employees or agents communicated on a number of different occasions with Michael Lauer and Martin Garvey in connection with the redemption requests to the Funds. Lauer was the manager of the Funds in New York, and Garvey was correctly identified in Credit Agricole's communications as being "in the manager's office."  DE 134, Ex. D at CA 0123 (fax from Credit Agricole to Citco, stating:  "Please note that our fund manager Mr. Robert Marquardt has discussed the redemption for 2/28/2000 with Martin Garvey in the managers office and the redemption has been approved"); CA 00134 (telefax to Citco from Credit Agricole, stating:  "You will find enclosed an e-mail we received from our fund manager concerning a discussion he had with Mr. Marty Garvery [sic] and Michael Luaer"); CA 0129 (February 24, 2001 e-mail to Martin Garvey and Ctico from Credit Agricole's fund manager, stating: "Following my discussions with Marty Garvey and Michael Lauer . . . ."); and CA 0151 (January 31, 2001 e-mail from David Newman, identified as being "with Lancer in New York" to Credit Agricole's fund manager, stating:  "It was a pleasure speaking to you yesterday").  The Receiver argues that this case presents a perfect example of a situation where specific personal jurisdiction over a foreign defendant is appropriate under New York's long-arm jurisdiction statute.  Credit Agricole disagrees, arguing that its ties to New York are insufficient to expose it to the jurisdiction of this Court.

<u>Discussion</u>

I.     <u>Personal Jurisdiction</u>

New York's long-arm jurisdiction statute can be relied upon for this Court to exercise personal jurisdiction over Credit Agricole.  This is a federal receivership proceeding, and the Receiver timely filed the receivership order in the Southern District of New York.  As this Court has previously held, based on 28 U.S.C. §§ 754 and 1692, the territorial jurisdiction of this Court, as the appointing Court for this Receivership, covers any and all districts in the United States where property believed to be that of the Receivership estate is found, so long as the proper documents have been filed by the Receiver in each such district as required by § 754. *See Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 823-24 (6th Cir. 1981); *SEC v. Vision Comm., Inc.*, 74 F.3d 287, 290 (D.C. Cir. 1996); Order and Opinion Granting Wise Global's Motion to Dismiss in *Steinberg, et al. v. A Analyst Limited, et al.*, Case No. 04-60898-Civ-Marra.  Because the receivership order was timely filed in the Southern District of New York, this Court's geographical jurisdiction extends to New York; and if Credit Agricole is subject to personal jurisdiction in New York, this Court may likewise exercise jurisdiction over Credit Agricole in this action.  *See Haile*, 657 F.2d at 823-24.

Long-arm statutes confer "specific jurisdiction" over a defendant when the cause of action arises out of the defendant's state-connected activity.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 & n.15 (1985).  Under the provision of

New York's long-arm statute allowing for exercise of specific personal jurisdiction over a non-domiciliary who, in person or through an agent, transacts any business within the state, jurisdiction is proper when (1) the defendant has transacted business in New York, and (2) the cause of action arises out of the subject matter of the transacted business.  N.Y. CPLR § 302(a)(1); *Sole Resort, S.A. de C.V. v. Allure Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006); *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006).

A non-domiciliary of New York "transacts business" in New York within the meaning of New York's long-arm statute when it purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.  *Beatie and Osborn*, 431 F. Supp. 2d 367; *Cutco Indus. Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *Cavu Releasing, LLC. v. Fries*, 419 F. Supp. 2d 388, 391 (S.D.N.Y. 2005) (defendant who transacts business in New York will be subject to personal jurisdiction there if the acts were purposeful and there is a substantial relationship between those acts and plaintiff's claim).

The test for jurisdiction under New York's long-arm statute is qualitative rather than quantitative, and the inquiry should be designed to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in suit.  *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 208 (E.D.N.Y. 2006); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 272 (S.D.N.Y. 2004) (jurisdictional inquiry under New York's long-arm

statute focuses on whether the defendant engaged in some purposeful activity in New York in connection with the matter in suit).  New York's long-arm statute is a single act statute, empowering courts to exercise specific jurisdiction over a non-domiciliary on the basis of one transaction in the forum so long as the defendant's activities in New York were purposeful and there is a substantial relationship between the transaction and the claim asserted.  *Packer v. TDI Systems, Inc.*, 959 F. Supp. 192, 197 (S.D.N.Y. 1997).  New York's long arm statute should be broadly construed, *i.e.*, to the limits of due process.  *Ulster Scientific, Inc. v. Guest Elchrom Scientific AG*, 181 F. Supp. 2d 95, 101 (N.D.N.Y. 2001).

Credit Agricole argues that the mere transfer of money into a New York bank account, as well as some communication concerning the transfer, does not amount to transacting business in New York and is insufficient to establish jurisdiction over Credit Agricole.  Credit Agricole relies on several cases that hold that the mere presence of a correspondent bank account in New York for the convenience of a foreign bank not otherwise doing business in New York is insufficient to confer jurisdiction over the foreign bank.  *See, e.g., Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 762 (S.D.N.Y. 2004); *Faravelli v. Bankers Trust Co.*, 447 N.Y.S.2d 962, 965 (N.Y. App. Div. 1982); *Leema Enterprises, Inc. v. Willi*, 575 F.Supp. 1533, 1537 n.1 (S.D.N.Y. 1983) (finding no personal jurisdiction where the defendant bank's "only connection" was its "passive receipt" of payment in a New York correspondent account).

Credit Agricole argues that the most similar factual scenario to that presented in this case is *Semi Conductor Materials v. Citibank Int'l PLC,* 969 F.Supp. 243, 246 (S.D.N.Y. 1997) where a New Jersey corporation sued a foreign bank for various claims arising out of the bank's alleged failure to fulfill its obligation to the corporation as advisor under a letter of credit.  The district court held that "the fact that defendant allegedly knew or should have known that the letter of credit would accrue to the benefit of plaintiff in New York has no bearing on the § 302(a)(1) analysis.  In this case, defendant's undertaking to act as the confirming and advising bank for a letter of credit issued by Rastriya Banijya Bank Ltd. in Nepal at the request of Agricultural Inputs Corporation of Nepal for the benefit of plaintiff, a New Jersey corporation, does not establish a sufficient degree of purposeful activity in New York to support a finding that defendant 'transacted business' here." *Id.* at 247.

The basis of the cause of action in *Semi Conductor Materials* was the alleged failure of an English bank to comply with its obligations under a letter of credit.  The only connection to New York appears to be a New York account of the defendant, into which account the plaintiff paid a fee relating to the letter of credit.  In that case, everything relating to the letter of credit and all of the alleged wrongful conduct by the defendant took place outside the United States.  The contacts with New York were too attenuated for the Court to exercise personal jurisdiction.  In our case, there is a distinction.  Here, the accrual of the cause of action, the alleged fraudulent transfer, had its locus in New York.

The Court agrees that "standing by itself, a correspondent bank relationship, without any other indicia or evidence to explain its essence may not form the basis for long-arm jurisdiction" on the theory of transacting business within the state. *Amigo Foods Corp. v. Marine Midland Bank-New York*, 39 N.Y.2d 391, 396 (N.Y. 1976); *see also, Nemetsky v. Banque de Developpement de la Republique du Niger*, 64 A.D.2d 694, 749 (N.Y. App. Div. 1978); *Taub v. Colonial Coated Textile Corp.*, 54 A.D.2d 660, 661 (N.Y. App. Div. 1976); *Masonite Corp. v. Hellenic Lines, Ltd.*, 412 F.Supp. 434, 438 (S.D.N.Y. 1976) (foreign vessel owner's maintenance of bank account in New York, although a transaction of business within New York, could not serve as the basis for asserting jurisdiction over the foreign vessel owner where the cause of action asserted against the vessel owner did not arise out of its maintenance of the bank account). If, however, the account in question played a role in the activities giving rise to the cause of action, specific jurisdiction under N.Y. C.P.L.R. § 302 may be proper. *Neewra, Inc. v. Manakh Al Khaleej General Trading and Contracting Co.*, Case No. 03 Civ. 2936, 2004 WL 1620874, *3 (S.D.N.Y. July 20, 2004) ("a cause of action arising out of a transaction involving the use of a correspondent account may confer jurisdiction over defendant in New York") (citation omitted).

Credit Agricole received two transfers from the Funds, which resulted in a profit of $950,000. It is these transactions that are the subject matter of the Receiver's claims. The specific transactions at issue utilized a New York bank account held by Credit Agricole in its own name, and did so at Credit Agricole's

direction and choosing.  From the inception of its investment, Credit Agricole indicated to Lancer, in its Subscription Agreement, that Credit Agricole's account at Bankers Trust Company of New York would be used for remittance of redemptions. DE 134, Ex. A at CA 0038.  The documents produced by Credit Agricole confirm that, when it submitted requests for the specific transfers at issue here, Credit Agricole specifically directed the remittances be made to its Bankers Trust Company of New York account.  *See* DE 134, Ex. C at CA 0107, CA, 0103, CA 0109, CA 0139.

This repeated use of the New York bank account, for the very transactions upon which the Receiver's claims arise, provides an appropriate basis for the exercise of personal jurisdiction here.  *See Bank Brussels Lambert v. Fiddler Gonzalez and Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) ("[A] single transaction would be sufficient to [grant jurisdiction over the defendant,] so long as the relevant cause of action also arises from that transaction"); *see also Deutsche Bank Sec., Inc. v. Montana Bd. Of Invs.*, 7 N.Y.3d 65, 71 (N.Y. 2006) ("[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted").

In this Court's Order and Opinion Granting Wise Global's Motion to Dismiss in *Steinberg, et al. v. A Analyst Limited, et al.*, this Court concluded that it lacked personal jurisdiction over Wise Global holding that the mere wiring of funds through a correspondent bank in New York was insufficient to create jurisdiction under N.Y.

CPLR § 302(a)(1).  DE 161 in Case No. 04-60898-Civ-Marra at 11-16.  The defendant in

that case was a Hong Kong based hedge fund that maintained a bank account with

Standard Bank Asia Limited, a Hong Kong bank.  Wise Global did not maintain a bank

account of any sort in New York or anywhere else in the United States or have any

ties to the United States.  See *id*. at 6.  Rather, the bank that Wise Global used,

Standard Bank Asia Limited, in turn had its own correspondent bank account at

Citibank, N.A. in New York, which Standard Bank utilized in connection with the

redemptions from the Lancer Offshore Fund.  *Id*. at 15.  As a result, this Court held

that fact to be insufficient to establish personal jurisdiction over Wise Global.  *Id*.

     The situation in this case is different and points out why personal jurisdiction

does exist.  In this case, it is the defendant itself, Credit Agricole, that had the

correspondent bank account in New York, the account was in its name and the

account was used for the very transactions that give rise to the Receiver's claims.

**The Exercise of Jurisdiction Over Credit Agricole Does Not Violate Due Process**

     "The Due Process Clause of the Fourteenth Amendment operates to limit the

power of a State to assert in personam jurisdiction over a nonresident defendant."

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984) (citing

*Pennoyer v. Neff*, 95 U.S. 714 (1878)).  "Due process requirements are satisfied when

in personam jurisdiction is asserted over a nonresident corporate defendant that has

'certain minimum contacts with [the forum] such that the maintenance of the suit

does not offend traditional notions of fair play and substantial justice.'"  *Id.* (citing

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Asahi Metals Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987).  Just a single act by a non-resident defendant directed to a forum state can be enough to confer specific personal jurisdiction if the act gave rise to the cause of action at issue.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18 (1985).

To satisfy the minimum contacts analysis for "specific" personal jurisdiction purposes, the defendant's contacts with the forum should (a) be related to the plaintiff's cause of action or have given rise to it, (b) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum (thus invoking the benefits and protections of its laws), and (c) be such that the defendant should reasonably anticipate being hauled into court there.  *See Francosteel Corp. v.M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994).

Here, the Receiver's claims arise directly from Credit Agricole's purposeful contacts with the forum - its specific and intentional use of its own correspondent bank account at a New York bank.  By opening up such an account, in designating the account for the receipt of redemptions from the Lancer Funds, and then using the account on more than one occasion to receive such redemption transfers, Credit Agricole purposely availed itself of New York facilities, and could reasonably expect to be called into court in New York for claims arising from its use of those New York contacts.  Based on these findings, the Receiver has established a prima facie case of personal jurisdiction.

## II.   The "Mere Conduit" Defense

Credit Agricole argues that the Receiver has not actually sued Credit Agricole, but rather he has only alleged that Credit Agricole received the transfer for the account of (i.e. "A/C") its customer, Unicorn.  Moreover, Credit Agricole asserts the "mere conduit" affirmative defense[2] to all of the Receiver's claims against it. According to this defense, there is no liability for one who handles a transfer "only for the purpose of fulfilling an instruction to make the funds available to someone else."  *Bonded Financial Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988).  This defense has been adopted by the Eleventh Circuit, and applied in the context of banks receiving funds and depositing them into customer accounts:

> When banks receive money for the sole purpose of depositing it into a customer's account, . . . the bank never has actual control of the funds and is not a [fraudulent] initial transferee.  This is true even when, after a bank deposits the money into a customer's account, the customer gives the money to the bank to pay off a debt that it owes to the bank.

*In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1200 (11th Cir. 1988); *see also In re Colombian Coffee Co. Inc.*, 75 B.R. 177, 179 (S.D. Fla. 1987) (bank was mere conduit where it "possessed no discretion with respect to the disposition of the funds - it was constrained to follow the debtor's instructions").

---

[2]  Any affirmative defense may be considered in resolving a motion to dismiss when the allegations on their face show that an affirmative defense bars recovery on the claim.  *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1277 (11th Cir. 2004).

In assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true.  *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).  Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff.  *See, e.g., Brower v. County of Inyo,* 489 U.S. 593, 598 (1989).  The Amended Complaint alleges that Lauer caused the Offshore Funds to make the subject transfer to or for the benefit of the Defendant.  Am. Compl. ¶¶ 86-88.  The Receiver asserts that he reasonably believes that the Defendant is either the initial or a subsequent transferee of the subject transfers, or was the beneficiary of the value of the transfers, and has made these allegations on this basis.

Credit Agricole asserts that the Receiver overlooks the fact that discovery provided by Credit Agricole demonstrates that Unicorn, not Credit Agricole, made the investments at issue.  The purpose of the limited jurisdictional discovery, however, was to determine Credit Agricole's contacts with New York, not to resolve the merits of the case.  This present motion is to dismiss, not for summary judgment.  The Receiver is entitled under FUFTA to recover transfers not only from the initial transferee, but also from any subsequent transferees who did not receive the transfer in good faith.  Fla. Stat. § 726.109.  Based on the allegations as they appear in the Amended Complaint, Credit Agricole's argument that it was a "mere conduit" cannot be determined as a matter of law at this time and cannot be decided at this point in the litigation.

Page 16 of  26

### III.   <u>Forum Non Conveniens</u>

Credit Agricole next argues that this action should be dismissed in favor of

Luxembourg or Switzerland on the grounds of forum non conveniens, pursuant to 28

U.S.C. § 1404(a).  The Court has already addressed a substantially identical argument

in one of the parallel fraudulent transfer actions in which a New York defendant

sought to have the action moved from this court to the Southern District of New York.

In rejecting the request for a change of venue, this Court held:

> The Receiver's choice of forum is here in the
> Southern District of Florida and he has filed approximately
> 50 actions in this Court seeking to recover receivership
> assets. . . .  As is clear from the filings, one party or
> another will be inconvenienced depending on the ultimate
> forum where this cause is litigated.  The ancillary nature of
> this proceeding in relation to the primary SEC case weighs
> heavily in favor of requiring all defendants to litigate their
> disputes in this forum. . . .  Indeed, this Court's familiarity
> with the primary action and the ancillary nature of this
> matter to the primary action supports denial of a motion
> for transfer on interests of justice and convenience
> grounds.

*Steinberg v. Alpha Fifth Group, et al.*, Case No. 04-60899-Civ-Marra, Order and

Opinion on Defendant Harold Zoref's Motion to Dismiss, DE 306 at 15-16.  The same is

equally true here.

### IV.   <u>Statutes of Limitations and Repose</u>

A statute of limitations bar is "an affirmative defense, and ... plaintiff[s][are]

not required to negate an affirmative defense in [their] complaint."  *La Grasta v.*

*First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing *Tregenza v.*

*Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).  A Rule

12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is

"apparent from the face of the complaint" that the claim is time-barred.  *Id.* (citing

*Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)); *Carmichael v. Nissan Motor*

*Acceptance Corp.,* 291 F.3d 1278, 1279 (11th Cir. 2002).

The original Complaint was filed on July 9, 2004 and an Amended Complaint

was filed in July 2006.[3]  The transfers that form the basis of Defendant's alleged

liability were made on February 1 and March 1, 2001.

The Amended Complaint asserts the following claims against Defendant:

I.      Actual fraudulent transfer under Florida Statutes § 726.105(1)(a), Florida
        Statutes § 726.108, and other applicable law;

II.     Constructive fraudulent transfer under Florida Statutes § 726.105(1)(b),
        Florida Statutes § 726.108, and other applicable law;

III.    Constructive fraudulent transfer under Florida Statutes § 726.106(1),
        Florida Statutes § 726.108, and other applicable law; and

IV.     Unjust enrichment.

DE 14.

---

[3]  Credit Agricole was named in the original Complaint, and there were no changes in the claims against it in the Amended Complaint.  Federal Rule of Civil Procedure 15(c) permits the relation back of an amended pleading to the date of the original pleading when the "claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading . . . ." Fed.R.Civ.P. 15(c).  Here the Amended Complaint asserts the same causes of action and seeks to recover the same transfers from the Defendant as the original Complaint, therefore the claims asserted in the Amended Complaint are deemed asserted as of the filing of the original Complaint.

A cause of action with respect to Count I (actual fraudulent conveyance) is extinguished unless the action is brought within four years after the transfer was made or, if later, within one year after the transfer was or could reasonably have been discovered by the claimant.  Fla. Stat. § 726.110(1).  A cause of action with respect to Count II ("constructive" fraudulent transfers as to present and future creditors), Count III ("constructive" fraudulent transfers as to present creditors), and Count IV (unjust enrichment[4]) is extinguished unless the action is brought within four years after the transfer was made, regardless of when the transfer is ultimately discovered.  Fla. Stat. § 726.110(2); Fla. Stat. § 95.11(3)(k).  The transfers took place within four years prior to the filing of the original Complaint.  The Court cannot conclude, as a matter of law, that the claims are time-barred.

**V.    Service of the Amended Complaint**

Credit Agricole also seeks dismissal of this action because "the Receiver waited over six years - and over two years after the expiration of the limitations period - to serve Credit Agricole without any justification. . . .  Compounding the wrong, the Receiver defied the numerous extensions granted by this Court for service."  DE 151 at 17.  Here, Defendant was not served with the Amended Complaint until 12 months

---

[4]  The rule relating to discovery of the wrongful conduct does not apply to unjust enrichment claims.  *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002).  Here, any unjust enrichment would have occurred at the time the transfers were received because that is when the alleged benefit was conferred upon Defendant and accepted by it.

after it was filed.  While such a delay may suggest a lack of due diligence, the delay does not warrant the dismissal with prejudice sought by Defendant.

The Receiver explains that it did not issue or serve a summons and complaint against Defendant immediately upon filing this action in order to allow additional time to investigate the nature of the numerous payments at issue from Offshore and Omnifund.  Based upon additional investigation, the Receiver has voluntarily dismissed many of the defendants in this action, and many more defendants in the other pending fraudulent conveyance actions.  The Receiver maintains that through these streamlining efforts, he has minimized unnecessary litigation and preserved the assets of the Receivership for distribution to the victim investors and creditors.

Federal Rule of Civil Procedure 4(m) ("Rule 4(m)") provides that service in a foreign country is exempted from the 120 day time requirement contained in the Rule.  Therefore, an extension of time to serve Credit Agricole was not necessary. Moreover, courts have discretion to extend the time for service of process, whether for good cause or not.  *See Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1133 (11th Cir. 2005) ("Thus, today we join our sister circuits and hold that Rule 4(m) grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause").

Thus, while the Receiver delayed in making service pursuant to the Hague Convention, Defendant has offered no specific evidence as to how it was prejudiced by not being served with the Amended Complaint sooner.  Indeed, any prejudice to

the Defendant is outweighed by the prejudice that would be suffered by the Receiver if he is prevented from recovering the excess redemptions, if the funds were fraudulently transferred.  Accordingly, the Court exercises its discretion to excuse the delay in service under a "flexible due diligence" standard recognized for service under the Hague Convention.  *See In re Teligent, Inc.,* Case Nos. 01-12974 (SMB) 03-3577, 2004 WL 724945, *3 (S.D.N.Y. March 30, 2004).

## VI.    Creditor Status Under Florida's Uniform Fraudulent Transfer Act

Florida's Uniform Fraudulent Transfer Act ("FUFTA") was promulgated to prevent an insolvent debtor from transferring its assets out of the reach of its creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors. *See* Fla. Stat. § 726.105(1) (2006).  Put simply, if a creditor either has a claim, has brought a claim or has evinced an intent to bring a claim, the debtor cannot vitiate the claim by secreting assets available to satisfy the obligation.  Thus, the statute provides that any transfer made or obligation incurred by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation to hinder or defraud the creditor or if the transfer was made without receiving "reasonably equivalent value in exchange for the transfer or obligation." *Id*.

Pursuant to the statute, for a cause of action to exist, the creditor-plaintiff must allege (1) there was a creditor sought to be defrauded, (2) a debtor intending fraud, or debtor which did not receive reasonably equivalent value in exchange for a transfer, and (3) a conveyance of property which could have been available to satisfy

the debt due.  *Nationsbank, N.A. v. Coastal Utils. Inc.*, 814 So.2d 1227, 1229 (Fla. Dist. Ct. App. 2002).  "In section 726.108 the Act authorizes the court to grant a creditor broad relief against the transferee of a fraudulent transfer, including an injunction against further disposition of the asset or the appointment of a receiver to take charge of the asset." *Friedman v. Heart Institute of Port St. Lucie,* Inc.  863 So.2d 189, 191 (Fla. 2003).

FUFTA defines a creditor as someone who has a claim against a debtor.  Fla. Stat. § 726.102(4) (2006).  The term "claim" is interpreted broadly and means a right to payment, whether or not it is reduced to judgment.  *Friedman v. Heart Institute of Port St. Lucie*, 863 So.2d 189, 191 (Fla. 2003).  A debtor is the person liable on the claim to the creditor.  § 726.102(6).  An asset is defined in the statute as "the property of the debtor."  § 726.102(2).  A transfer means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or interest in an asset ...." § 726.102(12).

Accordingly, based on the statutory definitions of the terms claim, debtor, asset, and transfer, standing under FUFTA is not limited only to creditors of transferors.  Assuming all of the other requirements for asserting a claim under FUFTA are met, a plaintiff may pursue a cause of action under FUFTA if he has a claim which qualifies him as a creditor of the entity or individual who has either transferred or received assets which thwarts the creditor's attachment.

Notwithstanding the foregoing conclusion, if the Receiver is claiming to be a creditor of Defendant, he must plead factual allegations establishing the creditor/debtor relationship.  "FUFTA claims are only permissible when the *factual allegations* in the complaint meet the elements of the statute."  *In re Wiand*, 2008 WL 818509, at *7 (M.D. Fla. Jan. 28, 2008) (emphasis in original).  The Amended Complaint does not allege sufficient facts to support an allegation that a Receivership Entity was a creditor of Credit Agricole, that Credit Agricole intended fraud or is a debtor which did not receive reasonably equivalent value in exchange for a transfer, and a conveyance of property which could have been available to satisfy the debt due to the creditor.  Accordingly, Defendant's Motion to Dismiss with respect to Counts I, II and III will be granted, with leave to amend.  Moreover, until the Receiver articulates on which Receivership Entity's behalf he is suing, the Court cannot determine whether a valid cause of action has been stated for unjust enrichment. Accordingly, Count IV is dismissed without prejudice for the same reasons Counts I, II, and III are dismissed.

**VII.**   **Federal Rule of Civil Procedure Rule 9(b)**

Defendant argues that the Receiver fails to sufficiently allege a claim for fraudulent transfer or unjust enrichment against them under Federal Rule of Civil Procedure 9(b) because the Amended Complaint does not allege, among other things, where the transfers took place, when the redemption orders were placed, the identity of the transfer agents, or the circumstances that rendered each specific

transfer fraudulent.

Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)") provides, in pertinent part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed.R.Civ.P. 9(b).  This Rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior."  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1370-71 (11th Cir. 1997) *quoting Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks omitted).  This Rule is satisfied if the complaint sets forth (1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendant's gain due to the alleged fraud.  *See id.* quoting *Brooks*, 116 F.3d at 1371.  That stated, the Court must not allow the application of Rule 9(b) to vitiate the overall concept of notice pleading.  *See Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001).

This Court has previously held that Rule 9(b) should not be applied to cases such as this one where violations of the Florida Uniform Fraudulent Transfers Act, Fla. Stat. § 726.101, *et seq.* are asserted:

> The Court concludes that the heightened pleading standard of Rule 9(b) does not apply to claims brought under the FUFTA.  *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co.,*

*L.L.C.* No. 00-cv-06410, 2007 WL 4482611, *4 (S.D. Fla. Dec. 19, 2007).
Unlike common law fraud claims, fraudulent transfer claims are asserted
against a person or entity that did not deal directly with the plaintiff in
the challenged transaction. Therefore, the plaintiff generally possesses
little or no information about the alleged fraudulent transfer other than
it occurred.[5] The fraudulent act, the clandestine act of hiding money, is
allegedly committed by a defendant and another, to the exclusion of the
plaintiff. This is in stark contrast to a common law fraud claim where a
plaintiff alleges that a defendant made a material false statement or
omission directly to the plaintiff. Under such circumstances, the
plaintiff is in a position to plead with the specificity required by Rule
9(b). This Court concludes that despite the use of the word "fraud," a
fraudulent transfer claim is significantly different from other fraud
claims to which Rule 9(b) is directed. *See Nesco Inc. v. Cisco,* No. Civ.A.
CV205-142, 2005 WL 2493353, * 3 (S.D. Ga. Oct. 7, 2005) (finding
common law fraud and fraudulent transfer "bear very little relation to
each other" since the element of false representation need not be
proven in fraudulent transfer cases). Given this lack of access to
information on the part of a plaintiff in a fraudulent transfer case, the
application of a heightened pleading standard is inappropriate.

*Gulf Coast Produce, Inc. v. American Growers, Inc.*, 07-cv-80633, 2008 WL 660100, *5

(S.D. Fla. Mar. 7, 2008). Therefore, Defendant's argument that the Amended

Complaint fails to satisfy Rule 9(b) pleading requirements is rejected.

## Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be

freely granted when justice so requires." Therefore, in accordance with the usual

---

[5] As discussed by Wright and Miller, a common reason identified by courts to
require heightened pleading for fraud claims rests on the idea that without this
information, a defendant would be unable to formulate a responsive pleading. C.
Wright & A. Miller, 5A Federal Practice & Procedure § 1296 (2004). In the fraudulent
transfer context, however, the defendant, as opposed to the plaintiff, is more likely
to possess the particularized information about the complained-of conduct.

practice upon granting a motion to dismiss, leave to replead those counts that are

dismissed herein without prejudice will be permitted.

<u>**CONCLUSION**</u>

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant Credit Agricole Indosuez

Luxembourg A/C Unicorn's Motion to Dismiss Amended Complaint [DE 80] **is GRANTED**

**in part and DENIED in part**, in accordance with the findings above.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 30th day of September, 2008.

_____
KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record
Magistrate Judge Linnea R. Johnson