UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:  04-60897-CIV-MARRA/JOHNSON

MARTY STEINBERG, as court-appointed
Receiver for LANCER MANAGEMENT
GROUP LLC, et al.

      Plaintiffs

v.

BARCLAY'S NOMINEES (BRANCHES)
LIMITED, A/C HASO, et al.

      Defendants.
_____/

## ORDER AND OPINION

THIS CAUSE is before the Court upon the Motion to Dismiss by Credit Suisse and

Credit Suisse (Luxembourg) S.A. [DE 61].  The motion is fully briefed and ripe for

review.  The Court has carefully considered the motion, the response, the

supplemental response,[1] the reply and is otherwise fully advised in the premises.

## Introduction

The Receiver is seeking to recover alleged fraudulent transfers from

defendants Credit Suisse, named in the Amended Complaint as Credit Suisse First

Boston (Credit First Zurich) ("CS Zurich"), and Credit Suisse Luxembourg S.A. ("CS

---

[1]  The Court, in an Order and Opinion entered on December 5, 2007, authorized the Receiver to conduct limited jurisdictional discovery relating to CS Luxembourg's contacts with the United States.  DE 108 at 7.  That discovery has been completed and is addressed by the Receiver in his supplemental response to the motion to dismiss and in Defendants' reply.

Luxembourg") (collectively, the "Defendants").  The claims relate to excess redemptions that Defendants received from the Lancer Offshore and Omnifund Funds - that is, the redemptions in excess of the amounts they invested in those Funds. Defendants have moved to dismiss the Amended Complaint on the grounds that (1) this Court lacks personal jurisdiction over CS Luxembourg; (2) the Receiver did not timely serve CS Luxembourg or CS Zurich; (3) the applicable statutes of limitations and repose bar the Receiver's claims against CS Luxembourg and CS Zurich; (4) the Receiver cannot state a claim under Florida's fraudulent transfer statutes because he is not a statutory "creditor," and (5) the Receiver has failed to plead the fraudulent transfer claims in accordance with Federal Rule of Civil Procedure 9(b).

## STANDARD OF REVIEW

### Personal Jurisdiction over CS Luxembourg

A federal district court may exercise personal jurisdiction over a nonresident defendant when it "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks omitted).  In cases where the court exercises personal jurisdiction by virtue of a federal statute authorizing nationwide service of process, the requirement of "minimum contacts" with a forum state is inapplicable. *Briggs v. Goodwin*, 569 F.2d 1, 8-10 (D.C. Cir.1977), *rev'd sub nom. on other grounds*, *Stafford v. Briggs*, 444 U.S. 527 (1980).  In such circumstances, minimum contacts

with the United States suffice.  *United States Sec. & Exch. Comm'n v. Carrillo,* 115

F.3d 1540, 1543 (11th Cir. 1997) (applicable forum for minimum contacts analysis, in

determining whether exercise of personal jurisdiction over nonresident defendant

comports with due process, is the United States, rather than state where suit is

brought, in cases where service of process has been effected pursuant to federal

statute authorizing nationwide or worldwide service); 4 Charles Alan Wright et al.,

Federal Practice And Procedure § 1068.1 (2d ed. 1997).

　　　An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction

is discretionary but not mandatory.  *E.g., Madara v. Hall*, 916 F.2d 1510, 1514 (11th

Cir.1990); *Bracewell*, 748 F.2d at 1504.  Because the parties did not request an

evidentiary hearing, the Court exercises its discretion not to conduct one.

　　　Absent an evidentiary hearing, the plaintiff need not prove the existence of

personal jurisdiction by a preponderance of the evidence; rather, the plaintiff's

burden is to establish a prima facie case of personal jurisdiction.  *E.g., Carrillo,* 115

F.3d at 1542.  A prima facie case requires "enough evidence to withstand a motion for

directed verdict."  *Id.* (internal quotes omitted).  In determining whether the plaintiff

has established a prima facie case, the Court must accept as true all allegations of

the complaint that are not controverted by evidence submitted by the defendant.

*E.g., id; Bracewell*, 748 F.2d at 1504.  Thus, if the allegations of the complaint

establish a prima facie case of personal jurisdiction and the defendant submits no

evidence controverting those allegations, the jurisdictional inquiry comes to an end.

If the allegations of the complaint do not themselves establish a prima facie case of personal jurisdiction, or if they are controverted by the defendant's evidence, the plaintiff must respond with affirmative evidence to supply the deficiency. *Posner v. Essex Insurance Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).  If the plaintiff does so, its evidence is to be credited even if it conflicts with the defendant's evidence. *E.g., Molina v. Merritt & Furman,* 207 F.3d at 1356; *Morris v. SSE, Inc.* 843 F.2d 489, 492 (11th Cir. 1988).

## Factual Background

On July 19, 2004, the Receiver filed the Complaint in this action against 27 defendants, including CS Zurich and CS Luxembourg, asserting three claims under Florida's fraudulent transfer statutes and one claim for unjust enrichment.  DE 1, ¶¶ 32-52.  One year later, on August 3, 2005, the Receiver voluntarily dismissed 17 defendants, including CS Luxembourg.  DE 12.  Approximately one year after that, on July 12, 2006, the Receiver filed an Amended Complaint [DE 14] adding certain defendants and re-adding CS Luxembourg.  The docket reflects another 11 months of inactivity by the Receiver, with no effort to effect service and no explanation for the delay.

After approximately a third year, on June 12, 2007, the Receiver had the Clerk issue summonses for the defendants.  DE 18.  On or about August 18, 2007, over one year after filing the Amended Complaint, the Receiver served CS Zurich and CS Luxembourg utilizing the procedures of the Hague Convention.

A client of CS Luxembourg that does not reside in the United States invested a total of $1,000,000 in the Offshore and Omnifund Funds in 1999, and received redemptions from the Funds in the amounts of (1) $969,533.81 on August 22, 2000, and (2) $470,930.25 on April 12, 2002.  Amended Complaint ¶¶ 86-88 & Ex. D.  Those redemptions resulted in a profit of $440,464.06.  Am. Compl. Ex. C.

Supplemental jurisdictional discovery has revealed that CS Luxembourg maintained two separate bank accounts in New York:  A correspondent account maintained with Bank of New York, and a "sub-custodian account" with Swiss American Securities, Inc. in New York.  These accounts were for the purposes of settling clients' transactions in United States securities and holding United States securities on behalf of its clients.  DE 135, Ex. A at 20.  The correspondent account with Bank of New York was also used by CS Luxembourg for "term deposits maintained by clients in United States dollars."  *Id.*  The Bank of New York account is in the name, "Credit Suisse (Luxembourg) SA."  DE 135, Ex. B at CSL-JD-00025.

During the course of jurisdictional discovery, CS Luxembourg produced copies of redemption requests that it sent to Citco in which CS Luxembourg specifically requested that "the redemption proceeds to be credited into our USD cash account No. 890-036-917 with Bank of New York, New York."  DE 135, Ex. C at CSL-JD-00023; *see also id.* at CSL-JD-00024 ("Please wire funds to our USD cash correspondent: Bank of New York, account 890-036-917").  Similarly, the confirmations sent back to CS Luxembourg confirmed that the requested transfers were made to the account of

"Credit Suisse (Luxembourg) SA" at Bank of New York.  *See* DE 135, Ex. D at CSL-JD-00017, 19 & 20.  The Receiver argues that this case presents a perfect example of a situation where specific personal jurisdiction over a foreign defendant is appropriate under New York's long-arm jurisdiction statute.  CS Luxembourg disagrees, arguing that the transactions at issue here cannot be said to involve CS Luxembourg purposely availing itself of that forum.

## Discussion

### I.   Personal Jurisdiction

New York's long-arm jurisdiction statute can be relied upon for this Court to exercise personal jurisdiction over CS Luxembourg.  This is a federal receivership proceeding, and the Receiver timely filed the receivership order in the Southern District of New York.  As this Court has previously held, based on 28 U.S.C. §§ 754 and 1692, the territorial jurisdiction of this Court, as the appointing Court for this Receivership, covers any and all districts in the United States where property believed to be that of the Receivership estate is found, so long as the proper documents have been filed by the Receiver in each such district as required by § 754. *See Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 823-24 (6th Cir. 1981); *SEC v. Vision Comm., Inc.*, 74 F.3d 287, 290 (D.C. Cir. 1996); Order and Opinion Granting Wise Global's Motion to Dismiss in *Steinberg, et al. v. A Analyst Limited, et al.*, Case No. 04-60898-Civ-Marra.  Because the receivership order was timely filed in the Southern District of New York, this Court's geographical jurisdiction extends to New York; and

if CS Luxembourg is subject to personal jurisdiction in New York, this Court may likewise exercise jurisdiction over CS Luxembourg in this action.  *See Haile*, 657 F.2d at 823-24.

Long-arm statutes confer "specific jurisdiction" over a defendant when the cause of action arises out of the defendant's state-connected activity.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 & n.15 (1985).  Under the provision of New York's long-arm statute allowing for exercise of specific personal jurisdiction over a non-domiciliary who, in person or through an agent, transacts any business within the state, jurisdiction is proper when (1) the defendant has transacted business in New York, and (2) the cause of action arises out of the subject matter of the transacted business.  N.Y. CPLR § 302(a)(1); *Sole Resort, S.A. de C.V. v. Allure Mgmt., LLC.*, 450 F.3d 100, 103 (2d Cir. 2006); *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006).

A non-domiciliary of New York "transacts business" in New York within the meaning of New York's long-arm statute when it purposefully avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.  *Beatie and Osborn*, 431 F. Supp. 2d 367; *Cutco Indus. Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *Cavu Releasing, LLC. v. Fries*, 419 F. Supp. 2d 388, 391 (S.D.N.Y. 2005) (defendant who transacts business in New York will be subject to personal jurisdiction there if acts were purposeful and there is substantial relationship between those acts and plaintiff's claim).

The test for jurisdiction under New York's long-arm statute is qualitative rather than quantitative, and the inquiry should be designed to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in suit.  *Wickers Sportswear, Inc. v. Gentry Mills, Inc.,* 411 F. Supp. 2d 202, 208 (E.D.N.Y. 2006); *EED Holdings v. Palmer Johnson Acquisition Corp.,* 387 F. Supp. 2d 265, 272 (S.D.N.Y. 2004) (jurisdictional inquiry under New York's long-arm statute focuses on whether the defendant engaged in some purposeful activity in New York in connection with matter in suit).  New York's long-arm statute is a single act statute, empowering courts to exercise specific jurisdiction over a non-domiciliary on the basis of one transaction in the forum so long as the defendant's activities in New York were purposeful and there is a substantial relationship between the transaction and claim asserted.  *Packer v. TDI Systems, Inc.,* 959 F. Supp. 192, 197 (S.D.N.Y. 1997).  New York's long arm statute should be broadly construed, *i.e.*, to the limits of due process.  *Ulster Scientific, Inc. v. Guest Elchrom Scientific AG,* 181 F. Supp. 2d 95, 101 (N.D.N.Y. 2001).

CS Luxembourg argues that it does not use the Bank of New York account to conduct business in the United States and that the record evidence incontrovertibly establishes that its receipt of "excess redemptions" from the Lancer Funds bears no nexus to New York.  "CS Luxembourg in Luxembourg was asked by a non-U.S. client to facilitate the client's subscriptions to and redemptions from the British Virgin Islands Lancer funds, which it did through the funds' administrator, Citco Fund Services

(Curacao) N.V., in the Netherlands Antilles." DE 157 at 4. CS Luxembourg relies on several cases that hold that the mere presence of a correspondent bank account in New York for the convenience of a foreign bank not otherwise doing business in New York is insufficient to confer jurisdiction over the foreign bank. *See, e.g., Faravelli v. Bankers Trust Co.*, 447 N.Y.S.2d 962, 965 (N.Y. App. Div. 1982); *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 762 (S.D.N.Y. 2004); *First City Sav. Bank v. Keener*, 685 F. Supp. 58 59-61 (S.D.N.Y. 1988) (making payments on a promissory note to a bank in New York insufficient to create personal jurisdiction under New York's long-arm statute).

The Court agrees that "standing by itself, a correspondent bank relationship, without any other indicia or evidence to explain its essence may not form the basis for long-arm jurisdiction" on the theory of transacting business within the state. *Amigo Foods Corp. v. Marine Midland Bank-New York*, 39 N.Y.2d 391, 396 (N.Y. 1976); *see also, Nemetsky v. Banque de Developpement de la Republique du Niger*, 64 A.D.2d 694, 749 (N.Y. App. Div. 1978); *Taub v. Colonial Coated Textile Corp.*, 54 A.D.2d 660, 661 (N.Y. App. Div. 1976); *Masonite Corp. v. Hellenic Lines, Ltd.*, 412 F.Supp. 434, 438 (S.D.N.Y. 1976) (foreign vessel owner's maintenance of bank account in New York, although a transaction of business within New York, could not serve as the basis for asserting jurisdiction over the foreign vessel owner where the cause of action asserted against the vessel owner did not arise out of its maintenance of the bank account). If, however, the account in question played a role in the activities

giving rise to the cause of action, specific jurisdiction under N.Y. C.P.L.R. § 302 may

be proper.  *Neewra, Inc. v. Manakh Al Khaleej General Trading and Contracting Co.,*

Case No. 03 Civ. 2936, 2004 WL 1620874, *3 (S.D.N.Y. July 20, 2004) ("a cause of

action arising out of a transaction involving the use of a correspondent account may

confer jurisdiction over defendant in New York") (citation omitted).

CS Luxembourg received two transfers from the Funds, which resulted in a

profit of $440,464.06.  It is these transactions that are the subject matter of the

Receiver's claims.  The specific transactions at issue utilized a New York bank

account held by CS Luxembourg in its own name, and did so at CS Luxembourg's

direction and choosing.  The documents produced by CS Luxembourg confirm that,

when it submitted requests for the specific transfers at issue here, CS Luxembourg

specifically directed the remittances be made to its Bank of New York account.  *See*

DE 135, Ex. C at CSL-JD-00023 & 24.

This repeated use of the New York bank account, for the very transactions

upon which the Receiver's claims arise, provides an appropriate basis for the exercise

of personal jurisdiction here.  *See Bank Brussels Lambert v. Fiddler Gonzalez and*

*Rodriguez,* 171 F.3d 779, 787 (2d Cir. 1999) ("[A] single transaction would be

sufficient to [grant jurisdiction over the defendant,] so long as the relevant cause of

action also arises from that transaction"); *see also Deutsche Bank Sec., Inc. v.*

*Montana Bd. Of Invs.,* 7 N.Y.3d 65, 71 (N.Y. 2006) ("[P]roof of one transaction in New

York is sufficient to invoke jurisdiction, even though the defendant never enters New

York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted").

In this Court's Order and Opinion Granting Wise Global's Motion to Dismiss in *Steinberg, et al. v. A Analyst Limited, et al.*, this Court concluded that it lacked personal jurisdiction over Wise Global holding that the mere wiring of funds through a correspondent bank in New York was insufficient to create jurisdiction under N.Y. CPLR § 302(a)(1).  DE 161 in Case No. 04-60898-Civ-Marra at 11-16.  The defendant in that case was a Hong Kong based hedge fund that maintained a bank account with Standard Bank Asia Limited, a Hong Kong bank.  Wise Global did not maintain a bank account of any sort in New York or anywhere else in the United States or have any ties to the United States.  See *id*. at 6.  Rather, the bank that Wise Global used, Standard Bank Asia Limited, in turn had its own correspondent bank account at Citibank, N.A. in New York, which Standard Bank utilized in connection with the redemptions from the Lancer Offshore Fund.  *Id*. at 15.  As a result, this Court held that fact to be insufficient to establish personal jurisdiction over Wise Global.  *Id*.

The situation in this case is different and points out why personal jurisdiction does exist in this case.  In this case, it is the defendant itself, CS Luxembourg, that had the correspondent bank account in New York, the account was in its name and the account was used for the very transactions that give rise to the Receiver's claims.

**The Exercise of Jurisdiction Over CS Luxembourg Does Not Violate Due Process**

"The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984) (citing *Pennoyer v. Neff*, 95 U.S. 714 (1878)).  "Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Asahi Metals Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987).  Just a single act by a non-resident defendant directed to a forum state can be enough to confer specific personal jurisdiction if the act gave rise to the cause of action at issue.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18 (1985).

To satisfy the minimum contacts analysis for "specific" personal jurisdiction purposes, the defendant's contacts with the forum should (a) be related to the plaintiff's cause of action or have given rise to it, (b) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum (thus invoking the benefits and protections of its laws), and (c) be such that the defendant should reasonably anticipate being hauled into court there.  *See Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994).

Here, the Receiver's claims arise directly from CS Luxembourg's purposeful contacts with the forum - its specific and intentional use of its own correspondent bank account at a New York bank.  By opening up such an account, in designating the account for the receipt of redemptions from the Lancer Funds, and then using the account on more than one occasion to receive such redemption transfers, CS Luxembourg purposely availed itself of New York facilities, and could reasonably expect to be called into court in New York for claims arising from its use of those New York contacts.  Based on these findings, the Receiver has established a prima facie case of personal jurisdiction.

## II.   <u>Service of the Amended Complaint</u>

CS Luxembourg also seeks dismissal of this action based on the Receiver's failure to "make diligent efforts to effect service on a foreign defendant within a reasonable time."  *Norton v. Belarus Mach. Of USA, Inc.*, 2005 WL 1421166, at *2 (M.D. Ala. June 9, 2005).  Here, Defendants were not served with the Amended Complaint until 12 months after it was filed.  While such a delay may suggest a lack of due diligence, the delay does not warrant the dismissal with prejudice sought by the Defendants.

The Receiver explains that it did not issue or serve a summons and complaint against the Defendants immediately upon filing this action in order to allow additional time to investigate the nature of the numerous payments at issue from Offshore and Omnifund.  Based upon additional investigation, the Receiver has

voluntarily dismissed many of the defendants in this action, and many more defendants in the other pending fraudulent conveyance actions. The Receiver maintains that through these streamlining efforts, he has minimized unnecessary litigation and preserved the assets of the Receivership for distribution to the victim investors and creditors.

Federal Rule of Civil Procedure 4(m) ("Rule 4(m)") provides that service in a foreign country is exempted from the 120 day time requirement contained in the Rule. Moreover, courts have discretion to extend the time for service of process, whether for good cause or not. *See Horenkamp v. Van Winkle & Co.,* 402 F.3d 1129, 1133 (11th Cir. 2005) ("Thus, today we join our sister circuits and hold that Rule 4(m) grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause").

Thus, while the Receiver delayed in making service pursuant to the Hague Convention, Defendants have offered no specific evidence as to how they were prejudiced by not being served with the Amended Complaint sooner. Indeed, any prejudice to the Defendants is outweighed by the prejudice that would be suffered by the Receiver if he is prevented from recovering the excess redemptions, if the funds were fraudulently transferred. Accordingly, the Court exercises its discretion to excuse the delay in service under a "flexible due diligence" standard recognized for service under the Hague Convention. *See In re Teligent, Inc.,* Case Nos. 01-12974 (SMB) 03-3577, 2004 WL 724945, *3 (S.D.N.Y. March 30, 2004).

III.   **Statutes of Limitations and Repose**

A statute of limitations bar is "an affirmative defense, and ... plaintiff[s][are] not required to negate an affirmative defense in [their] complaint." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).  A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is "apparent from the face of the complaint" that the claim is time-barred.  *Id.* (citing *Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)); *Carmichael v. Nissan Motor Acceptance Corp.*, 291 F.3d 1278, 1279 (11th Cir. 2002).

The Amended Complaint was filed in July 2006 and challenges redemptions received by CS Luxembourg and CS Zurich between July 1999 and April 2002.  Am. Compl. Exs. C & D.  Defendants assert each is time barred and should be dismissed.

The Amended Complaint asserts the following claims against Defendants:

I.     Actual fraudulent transfer under Florida Statutes § 726.105(1)(a), Florida Statutes § 726.108, and other applicable law;

II.    Constructive fraudulent transfer under Florida Statutes § 726.105(1)(b), Florida Statutes § 726.108, and other applicable law;

III.   Constructive fraudulent transfer under Florida Statutes § 726.106(1), Florida Statutes § 726.108, and other applicable law; and

IV.    Unjust enrichment.

DE 14.  The transfers that form the basis of Defendants' alleged liability were made on August 22, 2000 and April 12, 2002.

A cause of action with respect to Count I (actual fraudulent conveyance) is extinguished unless the action is brought within four years after the transfer was made or, if later, within one year after the transfer was or could reasonably have been discovered by the claimant.  Fla. Stat. § 726.110(1).  A cause of action with respect to Count II ("constructive" fraudulent transfers as to present and future creditors), Count III ("constructive" fraudulent transfers as to present creditors), and Count IV (unjust enrichment[2]) is extinguished unless the action is brought within four years after the transfer was made, regardless of when the transfer is ultimately discovered.  Fla. Stat. § 726.110(2); Fla. Stat. § 95.11(3)(k).

Based upon the limitations period of four years from the date of accrual,[3] Counts II, III and IV are extinguished by operation of Florida law unless they were brought *by April 12, 2006*.  Fla. Stat. § 726.110(2); Fla. Stat. § 95.11(3)(k).  CS Zurich was named in the original Complaint, and there were no changes in the claims against it in the Amended Complaint.  The original Complaint was filed on July 19, 2004. This date is before the expiration of the limitations period on April 12, 2006. Therefore, the Court cannot rule, as a matter of law, that any of the counts against CS Zurich are barred by Florida's statutes of limitations.

_____

[2]  The rule relating to discovery of the wrongful conduct does not apply to unjust enrichment claims.  *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002).  Here, any unjust enrichment would have occurred at the time the transfers were received because that is when the alleged benefit was conferred upon Defendants and accepted by them.

[3]  The date of the last alleged fraudulent transfer is April 12, 2002.

The Amended Complaint which reinstated CS Luxembourg as a defendant was filed on July 12, 2006 [DE 14].  This is indisputably after the expiration of Florida's statutes of limitations on April 12, 2006 as to Counts II, III, and IV.  The Receiver cannot relate his claims against CS Luxembourg back to the filing of the original Complaint.  The Receiver voluntarily dismissed CS Luxembourg from the original Complaint.  Although the filing of a complaint will initially toll the running of the statute of limitations, the subsequent voluntary dismissal of the action had the effect of placing the parties in a position as if the suit had never been filed.  *See Dade Co. v. Rohr Indus.*, 826 F.2d 983, 989 (11th Cir. 1987).  "[W]hen an action is dismissed, the statute of limitations is not tolled during the period that the dismissed action was pending; rather, the statute will run as if the dismissed action had never been filed." *McBride v. Pratt & Whitney*, 909 So. 2d 386, 388 (Fla. Dist. Ct. App. 2005).  The dismissal effectively extinguished CS Luxembourg from this case at that time.  Therefore, under Florida law, Counts II, III and IV are time-barred as to CS Luxembourg.

Turning to Count I, the original Complaint filed on July 19, 2004 alleged that CS Luxembourg received redemptions in excess of its investments.  At that point, the Receiver knew of the allegedly fraudulent transfers.  However, the Receiver subsequently dismissed CS Luxembourg.  The Receiver then re-added CS Luxembourg as a defendant in the Amended Complaint, which was filed on July 14, 2006.  Measured from that point, the actual fraudulent transfer claim was not made within

the four year limitations period from the last alleged transfer of April 12, 2002.

Furthermore, because the Receiver knew of the allegedly fraudulent transfers from at least July 19, 2004, he had no later than April 12, 2006 (four years from the last transfer) or July 19, 2005 ( one year from when the Receiver knew of the fraudulent transfers) to pursue Count I against CS Luxembourg.  The Receiver did not do so.  Therefore, under either test, Count I is time-barred.  Therefore, all four counts against CS Luxembourg are time-barred under Florida law.

**Equitable Tolling**

"'Equitable tolling' is a doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998).[4]  Equitable tolling should be "applied sparingly" by the courts. *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000).  Equitable tolling is available and appropriate where the plaintiff untimely files his complaint because of "extraordinary circumstances that are both beyond his control and unavoidable even with diligence."

---

[4] Florida Statutes § 95.051(1) enumerates eight circumstances under which the running of the time under any statute of limitations is tolled.  Absent from this list is a Receiver's failure to identify properly the recipient of a transfer.  Furthermore, § 95.051(2) expressly precludes the use of any tolling provision not listed:  "No disability or other reason shall toll the running of any statute of limitations except those specified in this section, § 95.091, the Florida Probate Code, or the Florida Guardianship Law."  Thus, the legislature has made clear its intent to exclude all tolling exceptions not listed in the statute. *HCA Health Servs. of Florida, Inc. v. Hillman*, 906 So.2d 1094, 1098-1100 (Fla. Dist. Ct. App. 2004).

*Sandvik v. U.S.*, 177 F.3d 1269, 1271 (11th Cir. 1999).  The burden rests with a

plaintiff to show that equitable tolling is warranted.  *Ross v. Buckeye Cellulose Corp.,*

980 F.2d 648, 661 (11th Cir. 1993).

   The Eleventh Circuit has held that equitable tolling is appropriate where the

defendant misleads the plaintiff into allowing the statute of limitations to lapse,

where the plaintiff has no reasonable way of discovering the wrong perpetrated

against him during the statutory period, or where the plaintiff timely files a

technically defective pleading but acts with proper diligence in prosecuting his claim.

*Justice v. U.S.*, 6 F.3d 1474, 1479 (11th Cir. 1993); *see also Irwin v. Veterans*

*Administration*, 498 U.S. 89, 96 (1990).  Due diligence by plaintiff is insufficient

alone, and equitable tolling does not apply to "garden variety" claims of excusable

neglect.  *Justice*, 6 F.3d at 1479-80; *Irwin*, 498 U.S. at 96; *see also Covey v. Arkansas*

*River Co.*, 865 F.2d 660, 662 (5th Cir. 1989) ("It is a common maxim that equity is not

intended for those who sleep on their rights").

   The Receiver argues equitable tolling is applicable to this case by analogizing

himself to a bankruptcy trustee, where statutes of limitations have been tolled in

order to further the goal of recovering funds for distribution to creditors.  The cases

cited by the Receiver stand for the proposition that in special circumstances of

excusable ignorance, or if the defendant's wrongful conduct prevents a timely filing,

the statute of limitations on an avoidance claim may be equitably tolled.  *See In re*

*Olsen*, 36 F.3d 71 (9th Cir. 1994); *In re Stanwich Fin. Servs. Corp.*, 29 B.R. 25 (Bkrtcy.

D. Conn. 2003); *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 700 (11ᵗʰ Cir. 2005).

These cases are inapplicable here where the Receiver has not shown that he

"remained in the dark without any fault or want of diligence or care on his part." *In*

*re Olsen*, 36 F.3d at 73.  Moreover, it is not alleged that Defendants did anything

wrongful regarding the Receiver's decision to voluntarily dismiss CS Luxembourg.  The

Receiver has not met his burden of demonstrating that he either "acted with due

diligence to discover the negligently concealed fraud or that one of the parties

involved in the alleged fraud took positive steps to conceal the transfers."  *In re Int'l*

*Admin. Servs.*, 408 F.3d at 702.  Whatever complications the Receiver encountered

upon his appointment, they presented no impediment to his ability to bring

fraudulent transfer allegations against CS Luxembourg in the original Complaint.

Through no influence of Defendants, the Receiver then decided to voluntarily dismiss

CS Luxembourg, and then later add CS Luxembourg as a defendant in the Amended

Complaint.  Nothing about these circumstances would support an application of

equitable tolling.

**<u>Other Applicable Law</u>**

The Receiver has not limited his recovery of the alleged fraudulent transfer to

causes of action solely under Florida law.  The Receiver has asserted causes of action

under Florida and "other applicable law."  The Receiver's pleadings leave open the

possibility that the laws of states other than Florida may apply to the Receiver's

recovery of the transfers, and the Receiver has preserved his right to proceed under

"other applicable law."

This allegation serves to preserve the Receiver's claims against Defendants in the event the substantive law of some other state governs the Receiver's claims. The Receiver raises the possibility that the law of New York, which provides for a six-year statute of limitation, may be applicable to this action. If New York law applies, the statute of limitations may not have run on the alleged fraudulent transfers to CS Luxembourg.

The Court has insufficient information as to whether Florida or New York better satisfies the "significant relationship test" of the Restatement (Second) of Conflict of Laws. If under a conflict of laws analysis, it is determined that Florida law applies, this case may not proceed against CS Luxembourg. If it is determined that New York law should apply and, if it is shown that the New York statute of limitations has not run as to the transfers in question, then the case may proceed against CS Luxembourg.

## IV.    Creditor Status Under Florida's Uniform Fraudulent Transfer Act

Florida's Uniform Fraudulent Transfer Act ("FUFTA") was promulgated to prevent an insolvent debtor from transferring its assets out of the reach of its creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors. *See* Fla. Stat. § 726.105(1) (2006). Put simply, if a creditor either has a claim, has brought a claim or has evinced an intent to bring a claim, the debtor cannot vitiate the claim by secreting assets available to satisfy the obligation. Thus, the statute

provides that any transfer made or obligation incurred by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation to hinder or defraud the creditor or if the transfer was made without receiving "reasonably equivalent value in exchange for the transfer or obligation." *Id.*

Pursuant to the statute, for a cause of action to exist, the creditor-plaintiff must allege (1) there was a creditor sought to be defrauded, (2) a debtor intending fraud, or debtor which did not receive reasonably equivalent value in exchange for a transfer, and (3) a conveyance of property which could have been available to satisfy the debt due. *Nationsbank, N.A. v. Coastal Utils. Inc.*, 814 So.2d 1227, 1229 (Fla. Dist. Ct. App. 2002). "In section 726.108 the Act authorizes the court to grant a creditor broad relief against the transferee of a fraudulent transfer, including an injunction against further disposition of the asset or the appointment of a receiver to take charge of the asset." *Friedman v. Heart Institute of Port St. Lucie,* Inc.  863 So.2d 189, 191 (Fla. 2003).

FUFTA defines a creditor as someone who has a claim against a debtor.  Fla. Stat. § 726.102(4) (2006).  The term "claim" is interpreted broadly and means a right to payment, whether or not it is reduced to judgment.  *Friedman v. Heart Institute of Port St. Lucie*, 863 So.2d 189, 191 (Fla. 2003).  A debtor is the person liable on the claim to the creditor.  § 726.102(6).  An asset is defined in the statute as "the property of the debtor."  § 726.102(2).  A transfer means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting

with an asset or interest in an asset ...." § 726.102(12).

Accordingly, based on the statutory definitions of the terms claim, debtor, asset, and transfer, standing under FUFTA is not limited only to creditors of transferors.  Assuming all of the other requirements for asserting a claim under FUFTA are met, a plaintiff may pursue a cause of action under FUFTA if he has a claim which qualifies him as a creditor of the entity or individual who has either transferred or received assets which thwarts the creditor's attachment.

Notwithstanding the foregoing conclusion, if the Receiver is claiming to be a creditor of Defendants, he must plead factual allegations establishing the creditor/debtor relationship.  "FUFTA claims are only permissible when the *factual allegations* in the complaint meet the elements of the statute."  *In re Wiand*, 2008 WL 818509, at *7 (M.D. Fla. Jan. 28, 2008) (emphasis in original).  The Amended Complaint does not allege sufficient facts to support an allegation that a Receivership Entity was a creditor of CS Zurich or CS Luxembourg, that these Defendants intended fraud or are debtors which did not receive reasonably equivalent value in exchange for a transfer, and a conveyance of property which could have been available to satisfy the debt due to the creditor.  Accordingly, Defendants' Motion to Dismiss with respect to Counts I, II and III will be granted, with leave to amend.  Moreover, until the Receiver articulates on which Receivership Entity's behalf he is suing, the Court cannot determine whether a valid cause of action has been stated for unjust enrichment.  Accordingly, Count IV is dismissed without prejudice for the same

reasons Counts I, II, and III are dismissed.

**V.**   **Federal Rule of Civil Procedure Rule 9(b)**

Defendants argue that the Receiver fails to sufficiently allege a claim for

fraudulent transfer or unjust enrichment against them under Federal Rule of Civil

Procedure 9(b) because the Amended Complaint does not allege, among other things,

where the transfers took place, when the redemption orders were placed, the

identity of the transfer agents, or the circumstances that rendered each specific

transfer fraudulent.

Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)") provides, in pertinent

part, that "[i]n all averments of fraud or mistake, the circumstances constituting

fraud or mistake shall be stated with particularity."  Fed.R.Civ.P. 9(b).  This Rule

"serves an important purpose in fraud actions by alerting defendants to the precise

misconduct with which they are charged and protecting defendants against spurious

charges of immoral and fraudulent behavior."  *Brooks v. Blue Cross and Blue Shield of*

*Florida, Inc.,* 116 F.3d 1364, 1370-71 (11th Cir. 1997) *quoting Durham v. Business*

*Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks

omitted).  This Rule is satisfied if the complaint sets forth (1) the exact statements or

omissions made; (2) the time and place of each such statement and who made the

statement or omission; (3) the substance of the statement and how it misled the

plaintiff and (4) the defendants' gain due to the alleged fraud.  *See id*. quoting

*Brooks*, 116 F.3d at 1371.  That stated, the Court must not allow the application of

Rule 9(b) to vitiate the overall concept of notice pleading.  *See Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001).

This Court has previously held that Rule 9(b) should not be applied to cases such as this one where violations of the Florida Uniform Fraudulent Transfers Act, Fla. Stat. § 726.101, *et seq.* are asserted:

> The Court concludes that the heightened pleading standard of Rule 9(b) does not apply to claims brought under the FUFTA.  *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*  No. 00-cv-06410, 2007 WL 4482611, *4 (S.D. Fla. Dec. 19, 2007). Unlike common law fraud claims, fraudulent transfer claims are asserted against a person or entity that did not deal directly with the plaintiff in the challenged transaction.  Therefore, the plaintiff generally possesses little or no information about the alleged fraudulent transfer other than it occurred.[5]  The fraudulent act, the clandestine act of hiding money, is allegedly committed by a defendant and another, to the exclusion of the plaintiff.  This is in stark contrast to a common law fraud claim where a plaintiff alleges that a defendant made a material false statement or omission directly to the plaintiff.  Under such circumstances, the plaintiff is in a position to plead with the specificity required by Rule 9(b).  This Court concludes that despite the use of the word "fraud," a fraudulent transfer claim is significantly different from other fraud claims to which Rule 9(b) is directed.  *See Nesco Inc. v. Cisco,* No. Civ.A. CV205-142, 2005 WL 2493353, * 3 (S.D. Ga. Oct. 7, 2005) (finding common law fraud and fraudulent transfer "bear very little relation to each other" since the element of false representation need not be proven in fraudulent transfer cases).  Given this lack of access to information on the part of a plaintiff in a fraudulent transfer case, the application of a heightened pleading standard is inappropriate.

---

[5]  As discussed by Wright and Miller, a common reason identified by courts to require heightened pleading for fraud claims rests on the idea that without this information, a defendant would be unable to formulate a responsive pleading.  C. Wright & A. Miller, 5A Federal Practice & Procedure § 1296 (2004).  In the fraudulent transfer context, however, the defendant, as opposed to the plaintiff, is more likely to possess the particularized information about the complained-of conduct.

*Gulf Coast Produce, Inc. v. American Growers, Inc.*,  07-cv-80633, 2008 WL 660100, *5

(S.D. Fla. Mar. 7, 2008).  Therefore, Defendants' argument that the Amended

Complaint fails to satisfy Rule 9(b) pleading requirements is rejected.

**Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be

freely granted when justice so requires."  Therefore, in accordance with the usual

practice upon granting a motion to dismiss, leave to replead those counts that are

dismissed herein without prejudice will be permitted.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that the Motion to Dismiss by Credit Suisse and

Credit Suisse (Luxembourg) S.A. **[DE 61] is GRANTED in part and DENIED in part**, in

accordance with the findings above.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 30th day of September, 2008.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record
Magistrate Judge Linnea R. Johnson